IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL ANDREW SMITH, )
)
      Plaintiff, )
)
      v. )    1:05CV00495
)
SANFORD CITY POLICE DEPARTMENT )
and RICHARD T. KENDALL )
)
      Defendants. )
)

MEMORANDUM OPINION

TILLEY, District Judge

This case arises out of a dispute between Plaintiff Michael Andrew Smith and Defendants Sanford City Police Department ("Police Department") and Officer Richard T. Kendall (collectively, "Defendants"). It is now before the Court on Officer Kendall's Motion for Summary Judgment [Doc. # 18] and the Magistrate Judge's Recommendation [Doc. # 55] that Officer Kendall's Motion for Summary Judgment be granted. For the reasons set forth below, Officer Kendall's motion for summary judgment will be DENIED.

I.

The undisputed facts are as follows:[1] On January 1, 2003, Officer Kendall

---

[1]Mr. Smith has stated that he "accepts the factual statement in Defendant's Supplemental Brief describing events prior to the parties' entrance into the Hallman Foundry." [Doc. # 52, at 1.] Officer Kendall's Supplemental Brief [Doc. # 30] exclusively cites Officer Kendall's affidavit [Doc. # 31] for the Statement of the Facts. Therefore, the Court will cite to Officer Kendall's affidavit [Doc. # 31], for

was on duty with the Sanford City Police Department, parked in a marked patrol car on Dalrymple Street, in Sanford, Lee County, North Carolina. [Doc. # 31 ¶ 3.] At approximately 7:20 p.m., a black Ford Explorer driven by Mr. Smith passed Officer Kendall, and Officer Kendall noticed that its rear taillights were out. [Doc. # 31 ¶ 4.] Officer Kendall turned around his patrol car and activated his blue lights in an effort to stop Mr. Smith, but Mr. Smith accelerated when Officer Kendall tried to pull him over. [Doc. #31 ¶ 4.] Officer Kendall pursued Mr. Smith through a yard and along a gravel road at high rates of speed with his blue lights activated, at times manually activating his siren. [Doc. # 31 ¶¶ 4-6.] Officer Kendall radioed the station to inform the Police Department that he was in pursuit. [Doc. # 31 ¶ 5.] Mr. Smith ran through two stop signs during the pursuit before the cars reached the Hallman Foundry area near the intersection of East Globe Street and Buchanan Street. [Doc. # 31 ¶ 6.]

Officer Kendall describes the Hallman Foundry area as "sand, mud, and railroad tracks." [Doc. # 31 ¶ 6.] There was only one light, which did not illuminate the area. [Doc. # 31 ¶ 7.] It had rained recently and "was still lightly drizzling so the sand was muddy." [Doc. # 31 ¶ 7.] Mr. Smith's black Ford Explorer stopped, and Officer Kendall parked nearby. [Doc. # 31 ¶ 8, Doc. # 52, Ex. 1 ¶ 2.] Officer Kendall approached Mr. Smith's vehicle on foot. [Doc. # 31 ¶ 9.] From there, the

---

those events prior to the parties' entrance into the Hallman Foundry, and then note when any subsequent events are in dispute.

2

parties' accounts of the events differ dramatically.

By affidavit, Mr. Smith states: "Officer Kendall then commanded me to shut-off the engine of my automobile and put my hands up. When I heard his command, I complied. With my engine shut off and my hands up, Officer Kendall fired several rounds through the windshield from the right side." [Doc. # 52, Ex. 1 ¶¶ 3-4.] Additionally, Mr. Smith alleges in his complaint that the first bullet hit him in the arm: "Shoot first in plaintiff's right arm; elbow section." [Doc. # 2 ¶ V.]

Officer Kendall's version of the events leading up to the shooting are much different. By affidavit, Officer Kendall states:

> The suspect looked at me, and revved the engine to what sounded like full throttle. . . . The SUV lunged toward me and began bouncing up and down, while lurching forward.
> . . .
> I yelled at the suspect to "Stop, police! Please stop!" I attempted to escape. . . . The suspect's SUV was continuing to wildly bounce while it was lunging toward me. The SUV's tires were spinning. It would gain traction and move forward, and then momentarily lose traction.. . . I lost my footing. My left leg became stuck against a pile of the muddy sand substance . . . . The suspect was continuing to rev the SUV's engine and move forward, a few inches at a time. I feared that the SUV would regain traction and run over me at any moment. I thought I was going to die and then remembered that I had my pistol. I reached for my gun, a .45 semi-automatic pistol, with my right hand, and aimed for the driver's right arm to try and knock it off the steering wheel. . . . I fired once at the suspect's arm through the windshield.
> I saw no reaction on the suspect's face. The suspect continued to rev the SUV's engine and it lunged forward. I thought that the suspect was going to run me over and kill me. The SUV was within a few feet from me. I could

3

> reach out my arm and touch the hood of the SUV. In fear
> for my life, I continued aiming at the suspect's arm and
> fired six more times through the windshield. The driver had
> no reaction. He continued revving the engine and the SUV
> was lunging at me. After the eighth shot, the driver
> stopped revving the engine, took his hands off the wheel
> and said "Okay, Okay."

There are two primary questions raised by the different accounts: did Mr. Smith have his hands raised in surrender at the time of the shooting and, more importantly, was the car continuing to lurch forward when Officer Kendall asserts he at shot Mr. Smith in fear that he would be hit by the car.

Forensic evidence, combined with the order of shots alleged in Mr. Smith's complaint, tends to support the events as described by Officer Kendall, specifically the contention that Mr. Smith had his hands down on the steering wheel and not raised in surrender when Officer Kendall began shooting. The entry and exit wounds on Mr. Smith's arms tend to show that Mr. Smith's arms were not raised in the air when his arms were shot. Mr. Smith alleged in his complaint that the first shot hit him in the arm near his elbow. If a jury believes both of these things-- that Mr. Smith was first shot in the arm and that Mr. Smith's arms were down when shot--then it could not reasonably believe the portion of Mr. Smith's affidavit that states Mr. Smith had his hands raised in surrender at the time of the first shot.

Ruts in the ground at the scene and mud splatter on the Ford Explorer show that Mr. Smith's tires spun without gaining traction at some point in time. However, the evidence does not determine a specific time when the engine ceased

4

being revved and the car, therefore, ceased lurching in a manner that could have threatened Officer Kendall. The only evidence regarding when the engine became idle is in the conflicting affidavits of Officer Kendall and Mr. Smith.[2]

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. There is no genuine issue of material fact if the non-moving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence

---

[2] When interviewed by Special Agent Johnson, witness Tony Maurice McLeod said that he did not think the SUV was still running when the shots were fired. [Doc. # 52, Ex. 3 at 4.] However, Mr. McLeod has not filed an affidavit and it is unclear to what, if called, he might testify at trial. Agent Johnson's report of what McLeod said is inadmissible hearsay and was not considered for purposes of summary judgment.

5

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

Government officials performing discretionary functions are entitled to qualified immunity from civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Mr. Smith alleges a violation of his constitutional rights under the Fourth Amendment, specifically the right to be free of unreasonable seizures, which includes seizures accomplished by excessive force. The Court will first ask whether the facts in the light most favorable to Mr. Smith demonstrate a violation of his Fourth Amendment right, and, second, whether that right was clearly established at the time so that "'a reasonable official would understand that what he is doing violates' the right in question." See id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

At the time of the shooting in 2003, excessive force under the Fourth Amendment was determined with an "objective reasonableness standard." Gray-Hopkins v. Prince George's County, 309 F.3d 224, 230 (4th Cir. 2002) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). The objective reasonableness standard balances the intrusion on the individual's Fourth Amendment interest and the countervailing government interest. See id. The specific facts and

6

circumstances of each case must be analyzed, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (internal quotations and citations omitted). Deadly force is justified only where a reasonable officer would have "sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

In 2005,[3] the Fourth Circuit held that an officer may employ deadly force in response to a reasonable belief that the suspect will use a vehicle to run down an officer or bystander, if that officer or bystander is in the path of the oncoming vehicle. See Waterman, 393 at 480. However, the Fourth Circuit held it would be unreasonable for an officer to shoot at a vehicle when the imminent threat of serious physical harm had passed, such as in the Waterman case, where the officers continued to shoot after the vehicle had passed by the officers without veering toward them and no one remained in the path of the vehicle. Id. at 482. It was clearly established at the time of the shooting in 2003 and prior to the Waterman decision, that the focus of the excessive force analysis is the objective

---

[3] The Fourth Circuit decided Waterman in 2005, approximately two years after the shooting in this case. While the holding in Waterman would not be clearly established law for purposes of the qualified immunity analysis, its reasoning is based on the objective reasonableness standard which was clearly established at the time. Thus, it is instructive in applying the objective reasonableness standard to the factual scenario of an officer employing deadly force to the driver of a vehicle.

7

reasonableness of the force at the moment it was employed. See Elliott, 99 F.3d at 643; Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991).

III.

After conducting a de novo review of the evidence in the record and applying the law concerning excessive use of force, it is determined as follows: (1) accepting the facts in the light most favorable to Mr. Smith, Officer Kendall is not entitled to qualified immunity at this stage in the proceeding; and (2) there is a genuine issue of material fact, namely, whether the shooting on January 1, 2003, constituted excessive force under the Fourth Amendment.

Accepting the facts in the light most favorable to Mr. Smith, a reasonable jury could accept Mr. Smith's version of the facts, finding that Mr. Smith turned off his engine prior to Officer Kendall's shooting, and that a reasonable officer in Officer Kendall's position could not have believed he was acting in response to an imminent threat of being injured by Mr. Smith's vehicle.

A reasonable jury could alternatively find that Officer Kendall reasonably feared for his life because Mr. Smith did not surrender to Officer Kendall but instead was revving his engine in attempt to gain traction and use his vehicle to injure or kill Officer Kendall. Whether the engine was turned off or whether the engine was revving is a factual question to be decided by a jury at trial.

IV.

For the foregoing reasons, Defendant Richard T. Kendall's Motion for Summary Judgment will be DENIED.

This the day of February 23, 2009

                                                                                      /s/ N. Carlton Tilley, Jr.
                                                                            Senior United States District Judge